ROBERT P. RUSSELL, Corporation Counsel Milwaukee County
You request my opinion with respect to six questions relating to the validity of certain portions of a proposed code of ethics for county officials and employes.
You state that the only authority granted to counties to adopt a code of ethics is found in sec. 19.45 (11)(c), Stats., which provides:
 "Counties and municipalities may and should establish a code of ethics for local public officials." *Page 165 
Whereas this is the only express reference to a code of ethics, and although counties have only those legislative powers expressly granted by statute or necessarily implied, it is my opinion that counties have, by the above statute and by implication from other statutes, necessary power to adopt and enforce a reasonable code of ethics. By implication a county could include in such code, requirements for financial disclosure and prohibitions similar to those provided in secs. 19.41-19.45, Stats. By reason of sec. 59.025, Stats., a county board could create an office or commission charged with administrative and limited enforcement powers with respect to such code.
 1. Can a county board provide that violation of its ordinance is punishable by fine'?
I am of the opinion that it cannot. However, it can provide for a forfeiture. This subject is discussed in 66 Op. Att'y Gen. 148 (1977), a copy of which is attached.
 2. "Does the county board have the authority to direct the county clerk or in the case of Milwaukee County, the election commission, not to place on the ballot the name of a candidate for an elective county office who has not filed a financial disclosure statement as required by the ordinance? [See s. 9.03 (5)]"
I am of the opinion that it does not have such authority. This subject is discussed in 66 Op. Att'y Gen. 148 (1977) referred to above.
 3. "Does the county board have the authority to direct the county treasurer to withhold the payment of salary or compensation to an elective county officer who has failed to file the statement of economic interest as required by the code of ethics? [See s. 9.03 (6)]"
I am of the opinion that it does not. A duly elected and qualified county officer is entitled, as an incident of the office, to the salary established in accordance with sec. 59.15
(1)(a), Stats., which cannot be diminished during the officer's term. Right to salary would terminate in case of resignation, death. or removal for cause as provided in secs. 17.09 and 17.16, Stats. See Schultz v. Milwaukee *Page 166 County, 250 Wis. 18, 22, 26 N.W.2d 260 (1947), and 65 Op. Att'y Gen. 62 (1976).
 4. "Does the county board have the authority to prohibit any officer of the county, including an elected officer, from acting as an agent or attorney for any one other than the county in connection with any transaction involving the county in which such officer participated during the course of his or her service for the county for a period of 12 months after leaving the service of the county'? [See s. 9.05 (9)]"
There is no statute which expressly or by implication grants the county board such authority; and I am of the opinion that it does not have such power. It could not apply to any elected officer and would probably result in a denial of equal protection of the laws as to other officers and employes unless it were a part of the original employment contract.
 5. "Would the provisions of s. 9.10 (1), (2), (3) and (4), as adopted by the county board, be sufficient to enable the board of ethics to administer oaths, to issue subpoenas, to require any person or organization to submit in writing such reports and answers to questions relative to proceedings before the board and to order testimony to be taken by deposition before any person designated by the board? In other words, does the county board have the authority to grant these powers to the board of ethics?"
I am of the opinion that the board of ethics as presently proposed would not have the power to administer oaths or issue subpoenas. If the board were a committee of the county board, it would have power to issue subpoenas by reason of sec. 885.01 (3), Stats. Whereas a county board has power to take testimony under oath in certain special circumstances, such as removal proceedings, it is my opinion that it cannot delegate a general power to an officer or commission it creates to administer a code of ethics. In order for the provisions of sec. 885.01 (4), Stats., to apply to a county commission, there must be some other statute authorizing such commission to take testimony. The Legislature deemed it necessary to expressly provide that the State Ethics Board have power to compel t he attendance of witnesses. See sec. 19.48 (4), Stats. I am of the opinion that it cannot be implied *Page 167 
from sec. 19.48, Stats., or other statutes, that a county board can authorize a county board of ethics to perform the duties granted by sec. 19.48, Stats.
 6. "Are the provisions of s. 9.15 [9.14] (2) (a) and (b) sufficient authority for the board to refuse public inspection of records obtained in connection with a request for an advisory opinion, or obtained or prepared by the board in connection with an investigation of the violation of the code of ethics'?"
I am of the opinion that such provisions could not be used by the board or its custodian of records as a form of blanket
refusal to permit inspection and copying as permitted by secs.19.21 (2) and 59.14 (1), Stats. See State ex rel. Youmans v.Owens, 28 Wis.2d 672, 137 N.W.2d 470 (1965), 139 N.W.2d 241
(1966); Beckon v. Emery, 36 Wis.2d 510, 153 N.W.2d 501 (1967);State ex rel. Journal Co. v. County Court, 43 Wis.2d 297,168 N.W.2d 836 (1969); and 67 Op. Att'y Gen. 12 (1978), a copy of which is enclosed. Whereas the Legislature has provided that certain records of the State Ethics Board are confidential and not open to inspection (see sec. 19.48 (10), Stats.), such statute does not apply to a county ethics board and the Legislature has not authorized counties to adopt similar restrictions on access to public records.
Proposed sec. 9.14 (1) and (2), provides:
 "(1) Except as provided in paragraph (2), all records in the possession of the board are open to public inspection at all reasonable times. The board shall require a person wishing to examine a statement of economic interests to establish his or her identity and, if representing another person or organization, the person or organization he or she represents. No person may use a fictitious name or address or fail to identify a principal in making any request for inspection.
 "(2) Notwithstanding s. 19.21, Wis. Stats., the following records in the board's possession are not open for public inspection:
 "(a) Records obtained in connection with a request for an advisory opinion other than summaries of advisory opinions that do not disclose the identity of persons requesting advisory *Page 168 
opinions; except that the board may make such records public with the consent of the officer who requests the advisory opinion. A person or organization who makes or purports to make public the substance of or any portion of an advisory opinion given to such person or organization by the board is deemed to have waived the confidentiality of the request for an advisory opinion and of any records obtained or prepared by the board in connection with such request.
 "(b) Records obtained or prepared by the board in connection with an investigation, except that the board shall permit inspection of an order for hearing under section 9.11 (1) and records that are made public in the course of a hearing by the board to determine if a violation of this section has occurred and except that the board may, in its discretion make such records public following the conclusion of its investigation."
Even if it were necessary to give a pledge of confidence to receive the records, and in my opinion it would not be necessary, the passage of time or nature of the information on the record itself might require permission to inspect and copy. In any event, it is my opinion that the custodian must in each case determine whether there is a public interest in denying inspection and copying which is paramount to the right granted by the statute. If it is initially determined that inspection should be refused, an express reason must be given, and the party seeking inspection can resort to mandamus to test the reason.
Section 19.21, Stats., is to be construed in pari materia with the open meeting law. See 60 Op. Att'y Gen. 284 (1971). Section19.85 (1)(f) and (h), Stats., allow closed sessions for the following purposes:
 "(f) Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations. *Page 169 
 "(h) Consideration of requests for confidential written advice from the ethics board under s. 19.46
(2), or from any local government ethics board."
I am of the opinion that provisions such as sec. 9.14 (1) and (2) of the proposed ordinance could, in view of the provisions in sec. 19.85 (1)(f) and (h), Stats., be relied upon in a given case as sufficient reasons why the custodian could initially refuse a request to inspect and copy the records in question. But, if the records involved are "books and papers required to be kept in his office," access to inspection would be required by reason of sec.59.14 (1), Stats., and the rule of State ex rel. Journal Co. v.County Court, supra. Section 59.14 (1), Stats., is applicable to officers, in addition to those specifically set forth, who are required to keep their offices at the county seat in offices provided by the county.
BCL:RJV